UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATHEW-ALLEN MCCASTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-00550-KES-CDB<br><br>ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*<br><br>(Doc. 2)<br><br>ORDER DENYING PLAINTIFF'S MOTIONS FOR EXPEDITED REVIEW AND IMMEDIATE INJUNCTIVE RELIEF<br><br>(Docs. 4, 5)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND TO DISMISS PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND CERTAIN CLAIMS<br><br>(Docs. 1, 3)<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Mathew-Allen McCaster ("Plaintiff"), proceeding pro se, initiated this action with the filing of a complaint against Defendant United States of America ("Defendant") and others not specifically named in the caption on March 13, 2025, in the District Court of the District of Columbia. (Doc. 1). The action was transferred to this Court on May 9, 2025. (Docs. 6, 7).

I.    **Motion to Proceed *In Forma Pauperis***

Plaintiff has filed a motion to proceed *in forma pauperis* without prepaying fees or costs pursuant to 28 U.S.C. § 1915.  (Doc. 2).  The Court finds Plaintiff has made the showing required by § 1915, and the request to proceed *in forma pauperis* will be granted.  *See* 28 U.S.C. § 1915(a) (authorizing the commencement of an action "without prepayment of fees or security" by a person who is unable to pay such fees).

Pursuant to 28 U.S.C. § 1915, federal courts must screen IFP complaints and dismiss the case if the action is "frivolous or malicious," fails to state a claim on which relief may be granted," or seeks monetary relief against an immune defendant.  28 U.S.C. § 1915(e)(2)(B).  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss [a IFP] complaint that fails to state a claim.").

II.    **Screening Requirement**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…"  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *See Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Pleadings by self-represented litigants are to be liberally construed.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories.  *Neitzke v. Williams*, 490 U.S. 319, 330 n .9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted).

1        Although leave to amend a deficient complaint is to be extended liberally where justice

2   requires (Fed. R. Civ. P. 15(a)(2)), courts may deny a pro se plaintiff leave to amend where

3   amendment would be futile.  *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002)

4   (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990));

5   *see Lucas v. Dep't of Corr.*, 66 F.3d 245, 248-49 (9th Cir. 1995) (holding that dismissal of a pro se

6   complaint without leave to amend is proper only if it is clear that the deficiencies cannot be cured

7   by amendment or after the pro se litigant is given an opportunity to amend).

8   **III.    Plaintiff's Complaint**[1]

9        On March 13, 2025, Plaintiff filed the instant complaint.  (Doc. 1).  According to Plaintiff's

10  allegations, he (Matthew Allen McCaster) is the Chief of the Mathias El Tribe.  (Doc. 1 at 1).

11  Plaintiff alleges that he and his tribe qualify for federal trust protections under the "Treaty of

12  Dancing Rabbit Creek" and various Acts.  *Id.* at 1-2.  He alleges "Defendants have violated"

13  obligations stemming from these federal authorities as: (1) "IHS[2] [and] Kern County have

14  unlawfully denied Plaintiff's access to federally mandated health services by falsely claiming the

15  Tribe is not 'federally recognized,' despite eligibility under 25 U.S.C. § 5304(e)"; (2) [Franchise

16  Tax Board ("FTB")] unlawfully garnished Plaintiff's Social Security Disability benefits in violation

17  of 42 U.S.C. § 407(a) (Social Security Act) and the Tribal General Welfare Exclusion Act

18  (TGWEA)"; (3) "Carrington Mortgage violated the Indian Non-Intercourse Act (25 U.S.C. § 177)

19  and [National Historic Preservation Act ("NHPA")] Section 106 by listing Plaintiff's tribal land for

20  auction on Zillow without proper federal consultation"; (4) "Defendants postmarked legal notices

21  before punitive actions but delayed delivery to Plaintiff, preventing him from responding before

22  financial harm occurred"; and (5) "[t]his pattern of fraudulent notices, wrongful tax collections,

23

24

25      [1] The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of

26  the *sua sponte* screening requirement under 28 U.S.C. § 1915.

27      [2] Although Plaintiff does not define "IHS" in his complaint, the Court presumes Plaintiff
    seeks to name as a Defendant and refers to the Indian Health Service, an agency within the U.S.

28  Department of Health and Human Services.  *See* https://www.ihs.gov/aboutihs/ (last visited Aug.
    13, 2025).

1   and land dispossession constitutes an enterprise under the Racketeer Influenced and Corrupt

2   Organizations Act (RICO) (18 U.S.C. §§ 1961–1968)." *Id.* at 2.[3]

3   Plaintiff asserts five claims for relief. The first claim, violation of the Treaty of Dancing

4   Rabbit Creek, asserts the "United States has breached its trust responsibility by denying tribal

5   healthcare, allowing unlawful taxation, and failing to consult Plaintiff regarding land protections

6   under NHPA Section 106." *Id.* The second claim, violation of the Indian Health Care Improvement

7   Act, 25 U.S.C. § 1601 *et seq.*, is based on "IHS [and] Kern County's refusal to provide Plaintiff

8   access to health services violates this Act, which mandates federal healthcare for qualifying tribes."

9   *Id.* The third claim, violations of the Federal Trust Responsibility in citing *Passamaquoddy v.*

10  *Morton*, 528 F.2d 370 (1st Cir. 1975), asserts the United States Supreme Court "has affirmed that

11  trust obligations apply to all Indigenous tribes with legitimate historical claims, even if not

12  'federally recognized.'" *Id.* The fourth claim, violations of the Indian Non-Intercourse Act, 25

13  U.S.C. § 177, asserts that "Carrington Mortgage's foreclosure activities against Plaintiff's tribal

14  land violate the Act, which prohibits unauthorized land dispossession without federal approval."

15  *Id.* The fifth and last claim, mail fraud and RICO violations under 18 U.S.C. §§ 1341 and 1962,

16  asserts that "Defendants engaged in a pattern of fraudulent activity by deliberately delaying critical

17  legal notices and seizing property and benefits under false pretenses." *Id.*

18  Plaintiff seeks the Court issue a declaratory judgment that (1) the Mathias El Tribe qualifies

19  for federal trust responsibilities under 25 U.S.C. § 5404(e) and 42 U.S.C. § 407(a) and (2)

20  Defendants' actions violate the Treat of Dancing Rabbit Creek and the Indian Non-Intercourse Act.

21  *Id.* at 3. Plaintiff further seeks the following injunctive relief: (1) prohibit Defendants "from further

22  garnishing Plaintiff's tribal benefits, imposing state taxation, or foreclosing on tribal land"; (2)

23  compel "IHS [and] Kern County to reinstate Plaintiff's health benefits to recognize the Mathias El

24  Tribe's eligibility under federal law"; and (3) order "all federal and state agencies to comply with

25

26  [3] The only Defendant named in the caption of Plaintiff's complaint is the United States of
    America. However, because Plaintiff included "et al." in the caption and appears to name other
27  Defendants associated with the claims addressed above (Doc. 1 at 2-3), the Court presumes for
    purposes of this screening order that Plaintiff intends to name as Defendants, in addition to the
28  United States of America, IHS, County of Kern, FTB, and Carrington Mortgage.

1   the consultation requirements under NHPA Section 106." Plaintiff also seeks restitution and

2   compensation through "[r]estoring all funds wrongfully garnished or seized by the [FTB,]"

3   "[h]alting the sale of Plaintiff's tribal land and restoring its legal status under federal protection[,]"

4   and "[a]warding attorneys' fees, court costs, and any further relief deemed just and proper." *Id.* at

5   3.

6   **IV.    Discussion**

7          **A.    Plaintiff's Motions for Temporary Restraining Order and Expedited Review**

8          Pending before the Court is Plaintiff's motion for temporary restraining order, filed in the

9   District of Columbia simultaneous with Plaintiff's complaint and transferred to this Court on May

10  9, 2025. (Docs. 3, 7). Also pending before the Court are Plaintiff's motion for expedited review

11  and request for immediate injunctive relief and motion for immediate ruling on the motion for

12  temporary restraining, all transferred to this Court on May 9, 2025. (Docs. 4, 5, 7).

13                 1.    Governing Legal Standards for Temporary Restraining Orders

14         A temporary restraining order (TRO) is an extraordinary and temporary "fix" that the Court

15  may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant

16  "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant

17  before the adverse party can be heard in opposition." *Espinoza v. Mroczek*, No. 2:23-cv-00228-

18  TLN-JDP, 2023 WL 1869182, at *1 (E.D. Cal. Feb. 9, 2023) (citing Fed. R. Civ. P. 65(b)(1)(A));

19  *see* E.D. Cal. Local Rule 231(a). The purpose of a temporary restraining order is to preserve the

20  status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65. "A preliminary injunction [or TRO][4]

21  is an extraordinary remedy never awarded as of right," and may only be awarded upon a clear

22  showing that the plaintiff is entitled to relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

23  (2008) (citation omitted). "A plaintiff seeking a [TRO] must establish that he is likely to succeed

24  on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

25  the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

26  Because the first factor "is a threshold inquiry and is the most important factor," a "court need not

27

28         [4] "The legal standards applicable to TROs and preliminary injunctions are substantially
    identical." *Babaria v. Blinken*, 87 F.4th 963, 976 (9th Cir. 2023) (quotations and citations omitted).

1    consider the other factors" if a movant fails to show a likelihood of success on the merits. *Baird v.*

2    *Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal quotation marks and citations omitted); *see,*

3    *e.g., Babaria*, 87 F.4th at 980 ("We need not consider the remaining *Winter* factors because

4    plaintiffs fail to show a likelihood of success on the merits.").

5                                    2.    Analysis

6            Plaintiff requests the Court grant his ex parte emergency TRO to "immediately halt" a

7    foreclosure of Plaintiff's tribal trust land scheduled on April 2, 2025. (Doc. 3 at 3). Plaintiff asserts

8    the request is made ex parte because Defendants "have engaged in a coordinated pattern of adverse

9    actions and legal maneuvering designed to deny Plaintiff his rights before he can respond." *Id.* at

10   1. He asserts that a TRO is warranted because he "has strong claims under treaty law, federal trust

11   doctrine, and statutory protections that prohibit the foreclosure"; the "loss of Plaintiff's tribal land

12   constitutes permanent harm that cannot be remedied by monetary damages alone"; the "harm to

13   Plaintiff far outweighs any inconveniences to Defendants, who are acting unlawfully under federal

14   law"; and "[u]pholding treaty obligations and preventing government-backed violations of

15   Indigenous rights serves the public interest." *Id.* He requests the Court issue a preliminary

16   injunction prohibiting Defendants from foreclosing on or selling his land, imposing further

17   unauthorized taxes, garnishments, or financial penalties against him, and engaging in further

18   violations of various federal statutes. *Id.* at 3. He further requests the Court order Defendants to

19   show cause why a permanent injunction should not be issued pending resolution of this case. *Id.*

20           Here, the undersigned finds Plaintiff fails to establish the requisite factors to succeed on his

21   request for a TRO. The undersigned notes that, as set forth below, Plaintiff is not likely to succeed

22   on the merits of his claims, in part because his claim against the federal government is barred by

23   the doctrine of sovereign immunity. His claims regarding IHS and County of Kern's denial of his

24   access to health services based on tribal eligibility similarly fail as tribal eligibility determinations

25   are reserved to the U.S. Department of the Interior ("DOI") and Plaintiff has not shown his tribe is

26   federally recognized. Plaintiff's claims regarding FTB's unlawful garnishment of his Social

27   Security Benefits are not properly before the Court because a state agency's garnishment is not a

28   claim over which this Court may exercise jurisdiction. Plaintiff's claims that the mortgage provider

1    violated federal law by listing his tribal land for auction fails as he does not show his tribe is an

2    Indian tribe nor his property is tribal land under the Indian Non-Intercourse Act.  Lastly, Plaintiff's

3    RICO claim based the predicate act of mail fraud fails as government entities cannot be named as

4    RICO defendants, the claim is deficient under Federal Rules of Civil Procedure 8 and 9, and the

5    complaint otherwise fails to state a claim.  Because the complaint fails to state any cognizable

6    claims, Plaintiff therefore fails to establish that he is likely to succeed on the merits of his claims.

7    *Winter*, 555 U.S. at 20.

8         Aside from lacking a likelihood of prevailing on the merits, Plaintiff fails to establish that

9    he is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief.

10   Plaintiff's contention—that if "foreclosure proceeds on April 2, 2025, Plaintiff will … [b]e further

11   displaced" and "[l]ose access to federally protected resources" (Doc. 3 at 1, 2)—fails to show he is

12   likely to suffer immediate and irreparable harm as the preliminary injunctive relief he seeks in

13   halting the past-dated foreclosure proceedings is effectively mooted as of the date of this order.  *See*

14   *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985) ("A moot action is one where the issues

15   are no longer live or the parties lack a legally cognizable interest in the outcome.") (citing *Lee v.*

16   *Schmidt-Wenzel and Harter*, 766 F.2d 1387, 1389 (9th Cir.1985)); *e.g.*, *Duncan v. California*

17   *Healthcare Receivership Corp.*, Case No. 1:20-cv-01288-AWI-SWO (PC), 2021 WL 5760533, at

18   *1 (E.D. Cal. Dec. 3, 2021) (denying as moot a plaintiff's motions for a TRO), *adopted in full*, 2021

19   WL 5999451, at *1 (E.D. Cal. Dec. 20, 2021); *accord*, *Coleman v. California Dep't of Corrections*

20   *and Rehabilitation*, Case No. CV 06–2606–JFW (PJW), 2009 WL 10680999, at *1 (C.D. Cal. Jan.

21   28, 2009) ("A [TRO] is available to an applicant for a preliminary injunction when the applicant

22   may suffer imminent irreparable injury due to a defendant's conduct *before* the Court can hear the

23   application for a preliminary injunction.") (emphasis added).

24        Notwithstanding the mooted request for relief, Plaintiff's motion fails to identify or assert

25   any authority from which the Court may halt or otherwise interfere in foreclosure proceedings of

26   purported tribal trust land, and no clear showing is alleged that he faces a continuing threat of harm

27   following the date of the purported foreclosure proceedings from which the Court may properly

28   address in the instant TRO request.  Because Plaintiff fails to plead or show he is likely to suffer

1   immediate and irreparable injury based on allegations that he is subject to a foreclosure proceeding

2   that presumably has now past—and had passed more than one month before the action was

3   transferred by the District of Columbia to this Court—Plaintiff's TRO fails on this factor. *Mazurek*

4   *v. Armstrong*, 529 U.S. 968, 972 (1997) (the likely harm must be supported by a "clear showing.").

5         Accordingly, because Plaintiff failed to establish the threshold factors that he is likely to

6   succeed on the merits of his claim or otherwise that he is likely to face immediate and irreparable

7   harm absent injunctive relief, the undersigned recommends that Plaintiff's motion for emergency

8   temporary restraining order (Doc. 3) be denied.

9             3.     Motions for Expedited Review and Immediate Ruling on the TRO

10        In his motions for expedited review and immediate ruling on the TRO (Docs. 4, 5)—which

11   were transferred to this Court more than one month after their filing (*see* Doc. 7) —Plaintiff requests

12   the Court to grant "an expedited hearing and issue a ruling before April 2, 2025" (Doc. 4 at 2) and

13   to enter a "prompt response … to prevent irreparable harm." (Doc. 5).

14        For the same reasons the undersigned recommends denial of the TRO, the Court will deny

15   Plaintiff's motions for expedited review and immediate ruling (Docs. 4, 5).

16      **B.**    **Screening of Pro Se Complaint**

17        Even liberally construing Plaintiff's complaint, the undersigned finds the complaint

18   defective for failure to state a claim and must be dismissed without leave to amend.

19             1.     Claim 1: Violation of Treaty of Dancing Rabbit Creek

20        The United States and its federal agencies are immune from suit absent a waiver providing

21   for their consent to be sued. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "The terms of consent to

22   be sued may not be inferred, but must be unequivocally expressed." *United States v. White Mt.*

23   *Apache Tribe*, 537 U.S. 465, 472 (2003). "The waiver of sovereign immunity is a prerequisite to

24   federal-court jurisdiction." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011). A waiver

25   of sovereign immunity is strictly construed in favor of the government, and a plaintiff bears the

26   burden to show that the government has waived its immunity as to the specific claim asserted.

27   *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986). Relevant here, "[i]n order to

28   maintain a civil action seeking to enforce a treaty against the United States, plaintiff must show an

1  explicit waiver of sovereign immunity permitting such a suit." *Wright v. United States*, Case No.

2  C21-5017 RSL, 2021 WL 965494, at *2 (W.D. Wash. Feb. 26, 2021) (citing *W. Shoshone Nat'l*

3  *Council v. United States*, 408 F. Supp. 2d. 1040, 1051-52 (D. Nev. 2005)).

4          Plaintiff's claim for violation of the Treaty of Dancing Rabbit Creek fails to state a claim.

5  The complaint does not cite to any explicit waiver of the federal government's sovereign immunity

6  based on the Treaty nor does it appear the Treaty provides for such an explicit waiver to permit

7  Plaintiff's suit. *See Wright*, 2021 WL 965494, at *2 ("The 1830 Treaty with the Choctaw Nation,

8  to which plaintiff cites, does not provide an explicit waiver of sovereign immunity permitting

9  plaintiff's suit.") (citing 7 Stat. 33).  Nor does Plaintiff provide any authority in support of a

10  violation of the Treaty predicated on a violation of NHPA Section 106 as he purports. *See id.* at *3

11  ("[P]laintiff does not cite to any other treaty or statute creating such a private right of action.").

12  Indeed, the Ninth Circuit has found that the "NHPA offers no basis to infer a waiver of sovereign

13  immunity." *See San Carlos Apache Tribe v. U.S.*, 417 F.3d 1091, 1096 (9th Cir. 2005); *cf., e.g.*,

14  *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524 (9th Cir. 1989) ("§ 702 of the

15  Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (1982), waives sovereign immunity[.]").

16          Because Plaintiff has not alleged an explicit waiver of sovereign immunity, and sovereign

17  immunity bars his claim, the undersigned recommends dismissal of this claim without leave to

18  amend.

19                  2.      Claim 2: Violation of the Indian Health Care Improvement Act

20          "In 1976, Congress passed the Indian Health Care Improvement Act, which established the

21  Indian Health Service and recognized a 'major national goal of the United States is to provide the

22  quantity and quality of health services which will permit the health status of Indians to be raised to

23  the highest possible level.'" *In re Conditions at Lake Cnty. Jail*, 638 F. Supp. 3d 1164, 1169 (D.

24  Mont. 2022) (quoting Pub. L. 94-437, 90 Stat. 1400) (codified as amended at 25 U.S.C. §§ 1601,

25  1661).  "[F]ederally-recognized … [tribal] members are eligible to receive healthcare from the

26  [Indian Health Service]." *Id.* (citing *Rosebud Sioux Tribe v. United States*, 9 F.4th 1018, 1021 (8th

27  Cir. 2021)).

28

1    As this Court previously has advised Plaintiff, Congress historically recognized Indian

2    tribes by treaty.  *See Mathias El Tribe*[5] *v. Attorney General*, Case No. 1:24-cv-00090-KES-CDB,

3    E.D. Cal. (Doc. 6 at 4) (citing *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 57

4    (2d Cir. 1994)).  In 1871, this practice ended, and tribal recognition occurred through executive

5    orders and legislation.  Roberto Iraola, *The Administrative Tribal Recognition Process and the*

6    *Courts*, 38 Akron L. Rev. 867, 871 (2005).  In 1978, pursuant to broad authority delegated by

7    Congress,[6] the United States DOI promulgated regulations establishing a formal recognition

8    process.  25 C.F.R. § 83.1-2 *et seq.*; *see generally Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273-

9    74 (9th Cir. 2004).  Thus, the DOI is responsible for determining which tribes have met the

10   requirements to be acknowledged as a tribe with a government-to-government relationship with the

11   United States.  *Id*. at 1274.

12   Here, Plaintiff's claims regarding IHS and County of Kern's denial of his access to health

13   services based on tribal eligibility despite his conclusory allegations—that he "and the Tribe are

14   entitled to healthcare as part of the federal trust responsibility" and his Tribe qualifies for federal

15   program eligibility (Doc. 1 at 2)—fails as tribal eligibility determinations are reserved to the U.S.

16   DOI and Plaintiff has not shown his tribe is federally recognized such that he is entitled to the relief

17   he seeks.  Moreover, an exhibit attached to Plaintiff's complaint reveals that "the Mathias El Tribe

18   is not listed among the 574 federally recognized tribes eligible for services from the Bureau of

19   Indian Affairs (BIA) as of January 2024."  (Doc. 1-2 at 7) (Tribal TANF Program Appeal Decision

20   Letter dated December 30, 2024).  Because Plaintiff has not shown his purported tribe is federally

21   recognized, he may not raise a challenge based on access under the Indian Health Care

22   Improvement Act.  Thus, the undersigned recommends dismissal of this claim without leave to

23   amend.

24

---

25   [5] Although the plaintiff in this action was "Mathias El Tribe," the complaint and other
     filings, such as the application to proceed *in forma pauperis*, were signed by Plaintiff here,
26   Mathew-Allen McCaster.

27   [6] *See Miami Nation of Indians of Ind., Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 345
     (7th Cir. 2001), cert. denied, 534 U.S. 1129 (2002) ("Congress has delegated to the executive
28   branch the power of recognition of Indian tribes without setting forth any criteria to guide the
     exercise of that power.") (citing 25 U.S.C. §§ 2, 9).

1          3.      Claim 3: Unlawful Garnishment and Federal Trust Responsibility Violations

2          Plaintiff claims that the Franchise Tax Board ("FTB") unlawfully garnished his Social

3   Security Disability benefits in violation of the Social Security Act and the Tribal General Welfare

4   Exclusion Act.

5          Under the Tax Injunction Act, the Court lacks subject matter jurisdiction over his illegal

6   garnishment claim.  "The Tax Injunction Act ('Act') provides that 'district courts shall not enjoin,

7   suspend or restrain the assessment, levy or collection of any tax under State law where a plain,

8   speedy, and efficient remedy may be had in the courts of such State.'"  *Poole v. California*

9   *Franchise Tax Board*, No. C 05-01892 SI, 2005 WL 8188065, at \*1 (N.D. Cal. Aug. 15, 2005)

10  (quoting 28 U.S.C. § 1341).  "By its plain language, the Act deprives federal district courts of

11  subject matter jurisdiction over actions for injunctive relief from state taxation schemes."  *Id.*

12  (quoting *Marvin P. Poer & Co. v. Counties of Alameda*, 725 F.2d 1234, 1235 (9th Cir. 1984)).

13  "The United States Supreme Court has held that California's administrative and judicial scheme for

14  challenging tax assessment is a 'plain, speedy and efficient' remedy."  *Id.* (quoting *California v.*

15  *Grace Brethren Church*, 457 U.S. 393, 415 (1982).

16         Accordingly, the undersigned will recommend this claim be dismissed for lack of subject

17  matter jurisdiction and without leave to amend.

18         4.      Claim 4: Violations of the Indian Non-Intercourse Act

19         To establish a prima facie case for violation of the Indian Non-Intercourse Act, "an Indian

20  tribe is required to allege that (1) it is an Indian tribe, (2) the land in question is tribal land, (3) the

21  sovereign has never consented to or approved the alienation of this tribal land, and (4) the trust

22  relationship between the United States and the tribe has not been terminated or abandoned."

23  *Robinson v. Salazar*, 838 F. Supp. 2d 1006, 1027-28 (E.D. Cal. Jan. 18, 2012) (citing *Delaware*

24  *Nation v. Pennsylvania*, 446 F.3d 410 (3d Cir. 2006) *as amended*, (June 14, 2006) and *cert.*

25  *denied,* 549 U.S. 1071 (2006)).  "Federal recognition is a prerequisite to an Indian tribe establishing

26  a 'government-to-government relationship with the United States,' and receiving a range of rights

27  and benefits."  *See Chinook Indian Nation v. Burgum*, No. 24-3629, 2025 WL 1692754, at \*1 (9th

28  Cir. June 17, 2025) (citing 25 C.F.R. § 83.2(a)).  Tribal land "is land held in common for the benefit

1    of all members of a tribe.  It does not apply to allotted land, which is land once held in common,

2    but now owned by individual Indians, and held in trust by the federal government." *San Xavier*

3    *Development Authority v. Charles*, 237 F.3d 1149, 1151 (9th Cir. 2001).

4            As discussed above, Plaintiff has not, and cannot, show that his alleged tribe is federally

5    recognized, and his complaint includes a document indicating his appeal for cash benefits was

6    denied as his tribe is not federally recognized by the BIA.  *See* (Doc. 1-2 at 7).  Though the Indian

7    Non-Intercourse Act "does not state or include language that a tribe must be a 'recognized' tribe,

8    *Robinson*, 838 F. Supp. 2d at 1028, the United States Supreme Court has interpreted "tribe" under

9    the Act as "a body of Indians of the same or a similar race, united in a community under one

10   leadership or government, and inhabiting a particular, though sometimes ill-defined, territory[,]"

11   *United States v. Candelaria*, 271 U.S. 432, 442 (1926).  Plaintiff's allegations in the complaint that

12   the Mathias El Tribe is "an Indigenous tribal nation with direct ties to the Choctaw Nation and other

13   Southeastern Woodland Tribes" (Doc. 1 at 1) do not sufficiently plead the elements of the definition

14   articulated in *Candeleria* as it is unclear whether Plaintiff's tribe is body of Indians of the same or

15   a similar race, is united in a community under one leadership or government, and inhabits a

16   particular territory.

17           Additionally, Plaintiff fails to state a claim under the Act under the second element

18   regarding tribal land.  His claims that Carrington Mortgage's foreclosure activities violated the Act

19   by listing his tribal land for auction fails as a matter of law as the property at issue (*see* Doc. 1-2 at

20   3) "is not tribal land, held in common by the members of the tribe.  Instead, it is … land owned by

21   [Plaintiff as an] individual landowner[.]"  *Charles*, 237 F.3d at 1152 (affirming dismissal of Non-

22   Intercourse Act claim because the lot at issue was allotted land owned by individual landowners);

23   *see* (Doc. 1-2 at 3) (Trustor of the property: "[Plaintiff] Mathew McCaster, A Single Man, As Sole

24   Ownership").

25           Because Plaintiff fails to show his tribe is an Indian tribe under the Act and that his property

26   at issue is tribal land under the Act, the claim fails as a matter of law.  The undersigned recommends

27   dismissal of this claim without leave to amend as it does not appear from Plaintiff's pleadings that

28   any land or property at issue may qualify as tribal land under the Act.

5.      Claim 5: Mail Fraud and RICO Violations

To state a cognizable civil RICO claim, a plaintiff must allege facts showing: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property.  *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,* 431 F.3d 353, 361 (9th Cir. 2005).  "Racketeering activity" or "predicate acts" encompass a variety of criminal acts identified in 18 U.S.C. § 1961(1).  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010).  To satisfy the "pattern" requirement, there must be at least two acts of racketeering activity within a ten-year period.  18 U.S.C. § 1961(5).  Under some circumstances, two acts may not be sufficient.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) (noting "in common parlance two of anything do not generally form a 'pattern.'")).  Where predicate acts arise from alleged fraud, the acts "must be alleged with specificity in compliance with Rule 9(b) of the Federal Rules of Civil Procedure."  *Goodspeed v. Nichols*, No. 2:12–cv–0807 JAM DAD PS, 2012 WL 5878245, at *5 (E.D. Cal. Nov. 20, 2012) (citing *Schreiber Distrib. Co.*, 806 F.2d at 1400-01).

Plaintiff's claims that Defendants committed mail fraud and RICO by delaying mail fails as a matter of law.  Government entities, such as the United States of America, IHS, County of Kern, and the FTB, cannot be named as defendants under RICO because "'government entities are incapable of forming [the] malicious intent' necessary to support a RICO action."  *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp.*, 940 F.2d 397, 404 (9th Cir. 1991)) (dismissing RICO claims against city defendant based on predicate acts of, inter alia, extortion); *e.g., Mehr v. Cnty. of Orange*, No. SACV 09-1158-AG (ANx), 2011 WL 13193323, at *8-9 (C.D. Cal. Jan. 5, 2011) ("the County of Orange is a government entity, and as a matter of law is an improper RICO defendant").

Even if governmental agencies and municipalities could properly be named RICO defendant, Plaintiff's conclusory allegations that "Defendants engaged in a pattern of fraudulent activity by deliberately delaying critical legal notices and seizing property and benefits under false pretenses" (*see* Doc. 1 at 2) are factually insufficient.  The alleged offense of mail fraud (18 U.S.C.

13

§ 1341) is a predicate act under § 1961(1). However, Plaintiff fails to plead any facts that cognizably allege a pattern of racketeering activity. *Schreiber Distrib. Co.*, 806 F.2d at 1399 (plaintiffs' pleading of alleged acts that constituted a single fraud on a single victim failed to sufficiently allege a pattern of racketeering activity). Notably, too, the complaint does not allege any relevant dates or facts describing the circumstances of the alleged mail fraud or whether at least two acts of the predicate act occurred within the requisite ten-year period. The allegations thus fail to meet the heightened pleading requirements under Rule 9(b) to plead mail fraud "to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in the scheme." *See Lancaster Cmty. Hosp.*, 940 F.2d at 405 ("The Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud."). The claim is deficient such that it does not provide Defendants fair notice of the claims and grounds supporting them. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, the undersigned concludes that the complaint fails to state a cognizable RICO claim predicated on mail fraud. To the extent Plaintiff may amend his complaint to state a civil RICO claim against Defendant Carrington Mortgage (the only nongovernmental entity named as a Defendant), the undersigned will recommend he be provided the opportunity to do so if he can in good faith.

Separately, to the extent Plaintiff purports to assert a claim of mail fraud against Defendants, that claim fails. Plaintiff, as a private individual, has no private right of action to pursue violations of criminal statutes. *See, e.g., Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding specific criminal provisions in the United States Code "provide no basis for civil liability"); *Bland v. Gross*, No. 1:20-cv-00542-DAD-BAM (PC), 2021 WL 120964, at *1 (E.D. Cal. Jan. 13, 2021) ("Title 18 of the United States Code is a criminal statute and does not provide individual plaintiffs with a private cause of action.") (quotation and citation omitted).

Thus, to the extent Plaintiff's complaint asserts mail fraud as a standalone claim, the undersigned recommends the claim be dismissed without leave to amend.

///

1    **V.    <u>Leave to Amend</u>**

2         Generally, Rule 15 provides that "leave [to amend] shall be freely given when justice so

3    requires." Fed. R. Civ. P. 15(2).  However, district courts are only required to grant leave to amend

4    if a complaint can be saved. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).  "Courts are not

5    required to grant leave to amend if a complaint lacks merit entirely." *Id*.  When a complaint cannot

6    be cured by additional facts, leave to amend need not be provided. *Doe v. United States*, 58 F.3d

7    494, 397 (9th Cir. 1995).

8         As noted above, the undersigned finds further amendment is warranted only as to Plaintiff's

9    civil RICO claim insofar he is able to cure the identified deficiencies in asserting a claim against

10   Defendant Carrington Mortgage.  Additionally, the undersigned recommends the remaining claims

11   be dismissed without leave to amend as it does not appear those claims could be cured by additional

12   facts.

13        If Plaintiff wishes to file a first amended complaint, any such amended complaint should be

14   brief (Fed. R. Civ. P. 8(a)) but it must state what each named defendant did that led to the

15   deprivation of Plaintiff's constitutional rights (*Iqbal*, 556 U.S. at 678-79).  Although accepted as

16   true, the "[f]actual allegation must be [sufficient] to raise a right to relief above the speculative

17   level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).  Additionally, Plaintiff may not change the

18   nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507

19   F.3d 605, 607 (7th Cir. 2007) (explaining no "buckshot" complaints permitted).

20        Finally, an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cnty.*,

21   693 F.3d 896, 927 (9th Cir. 2012).  If Plaintiff elects to proceed with this action by filing an

22   amended complaint, the Court cannot refer to a prior pleading in order to make an amended

23   complaint complete. *See* E. D. Cal. Local Rule 220.  The **amended complaint must be complete**

24   **in itself without reference to the prior or superseded pleading**.  Once the amended complaint is

25   filed, the original pleading no longer serves any function in the case.  Thus, in the amended

26   complaint, **Plaintiff must re-plead all elements of his claims, including all relevant facts, even**

27   **the ones not addressed by this screening order**.

28   ///

15

1  **VI.    Conclusion, Order, and Recommendations**

2          For the reasons discussed above, it is hereby **ORDERED** that:

3      1.  Plaintiff's motions to expedite review and request for immediate injunctive relief (Doc.

4          4) and for immediate ruling on his motion for temporary restraining order (Doc. 5) are

5          DENIED.

6          And it is hereby **RECOMMENDED** that:

7      1.  Plaintiff's motion for temporary restraining order (Doc. 3) be DENIED.

8      2.  Plaintiff's complaint (Doc. 1) be DISMISSED without prejudice as to his civil RICO

9          claim against Defendant Carrington Mortgage, and with prejudice and without leave to

10         amend as to his remaining claims.

11     3.  Plaintiff be provided leave to amend to the extent that, within 21 days from the date of

12         service of any order by the presiding district judge adopting these Recommendations,

13         Plaintiff be directed to:

14         a.  File a first amended complaint curing the deficiencies identified by the undersigned

15             in these Findings and Recommendations as to his remaining civil RICO claim; or

16         b.  File a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) if

17             Plaintiff no longer wishes to pursue this action.

18         These Findings and Recommendations will be submitted to the United States District Judge

19  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after

20  being served with a copy of these Findings and Recommendations, a party may file written

21  objections with the Court.  Local Rule 304(b).  The document should be captioned, "Objections to

22  Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave

23  of Court and good cause shown.  The Court will not consider exhibits attached to the Objections,

24  but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages

25  filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing

26  these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any

27  ///

28

objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **August 13, 2025**

UNITED STATES MAGISTRATE JUDGE

17